**Burchfield v. M.H.M. Partnership**

534

C.P. of Bradford County, no. 95CV000219.

*David B. Keeffe,* for plaintiff.
*John M. Mulcahey,* for defendants.

MOTT, *J.,* September 24, 1999—This wrongful death and survival action was brought by the above named plaintiff as a result of an apartment building fire that occurred on February 15, 1994. The decedent died of carbon monoxide intoxication suffered during the fire. All the defendants have filed motions for summary judgment. The defendants claim that the plaintiff is not entitled to relief under either the wrongful death or survival portions of 42 Pa.C.S. §8301 et seq. (commonly and hereafter referred to as the Wrongful Death and Survival Act) or 20 Pa.C.S. §§3371-73.

A party may move for summary judgment after the relevant pleadings are closed, if, after the completion of discovery relevant to the motions, the party who bears the burden of proof at trial has failed to produce evidence essential to submit the case to a jury at trial. Pa.R.C.P. 1035.2. Our standard in determining whether to grant such a motion is well settled. We must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 471, 684 A.2d 137, 140 (1996). Summary judgment can only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

First, we must consider the plaintiff's claims for damages under the survival portion of the Wrongful Death and Survival Act. In a survival action, a decedent's estate sues on behalf of the decedent, upon claims the decedent could have pursued but for her death. *Frey v. Pennsylvania Electric Company,* 414 Pa. Super. 535, 539, 607 A.2d 796, 798 (1992). The action is brought by the administrator of the estate in order to recover loss the estate suffered as a result of the tortious conduct of another. *Kiser v. Schulte,* 538 Pa. 219, 226, 648 A.2d 1, 4 (1994). In a survival action the personal representative of the estate may recover damages for the decedent's pain and suffering, for the loss of the decedent's gross earnings from the date of injury until death, and for the loss of the decedent's future earnings for the period of the decedent's life expectancy, less the probable costs of the decedent's maintenance.[1] *Id.* at 226-27, 648 A.2d at 4.

Initially, we note that where there is no evidence that the decedent was conscious at *any time* from the time of injury until the time of death, an award of damages for pain and suffering is unwarranted. *Nye v. PennDOT,* 331 Pa. Super. 209, 214, 480 A.2d 318, 321 (1984). In the present matter, the plaintiff and the defendants rely upon expert opinions in expressing their views regarding whether or not the decedent was conscious at any time from the time of injury until the time of death. The report of the defendants' expert is included in the record, and in this report their expert concludes that the dece-

---

1. Loss of the decedent's gross earnings from the date of injury until death is not in issue here because there is no dispute that the decedent did not survive the fire and that her body was found in the apartment building after the fire was extinguished.

dent "was with *medical certainty* unconscious and with very high probability (almost certainty), dead at the time the f[i]re broke out." (Exhibit 1, p. 3, attached to defendants' motion for summary judgment.) (emphasis added) The plaintiff, on the other hand, has not provided an expert report. The plaintiff simply states in an affidavit that his expert opines that carbon monoxide had produced unconsciousness "early on." (Plaintiff's affidavit, p. 4, attached to plaintiff's submission in opposition to defendants' motion for summary judgment.) Moreover, the plaintiff does not assert in this affidavit that even this limited opinion is held with the requisite degree of medical certainty. Pennsylvania Rule of Civil Procedure 1035.3 makes clear that the party opposing a motion for summary judgment may not rest upon the mere allegations and denials in his pleadings. Rather, he must identify evidence in the record controverting the evidence cited in support of the motion, or that establishes the cause of action that the motion asserts has not been made out. He may even supplement the record to do so. Here, the plaintiff did neither. He has not pointed to any evidence in the record, and he has not supplemented the record with any additional evidence after the motion for summary judgment was filed, which *creates any doubt* as to whether the decedent was conscious at any time from the time of injury until the time of death. *Merriweather, supra* at 464, 684 A.2d at 137. In face of the fact that the defendants have submitted an expert opinion expressed with medical certainty on this issue, and the fact that the plaintiff (who bears the burden of proof at trial) has failed to submit any expert opinion which actually contradicts the defendants' expert, and which is rendered with the

requisite degree of certainty, it is evident that the plaintiff has failed to produce evidence essential to submit this claim to a jury. Pa.R.C.P. 1035.2. Thus, we conclude that even viewing the evidence in a light most favorable to the plaintiff, there is no genuine issue of material fact concerning whether the decedent was conscious at any time from the time of injury until the time of death. *Merriweather, supra* at 464, 684 A.2d at 137. Therefore, the motion for summary judgment will be granted on the claim for the decedent's pain and suffering.

We must now consider whether the plaintiff has produced evidence sufficient to require submission of the claim for the decedent's loss of future earnings to a jury at trial. Pa.R.C.P. 1035.2. The record before us establishes that the decedent had not been employed since the 1960s. (Deposition of Romayne Ann Popadich, p. 7.) The decedent's only source of income since the early 1970s was the receipt of alimony. (Deposition of Michael Burchfield, pp. 3, 7, 30-31.) The defendants, relying upon *Slavin v. Gardner,* 274 Pa. Super. 192, 195-96, 418 A.2d 361, 363 (1979) (quoting *Smail v. Flock,* 407 Pa. 148, 154, 180 A.2d 59, 61 (1962)), contend that these alimony receipts do not constitute earnings in that alimony is not the product of *intellectual or bodily labor in a business or profession.* The plaintiff, on the other hand, asserts that these alimony receipts make up the decedent's earning power because the alimony represents the economic value of the decedent's noneconomic contribution to the marriage as a homemaker, thereby equating to intellectual or bodily labor. We agree with the plaintiff. While we have found no appellate authority ruling on this precise issue, it is a well settled principle of fam-

ily law that the contributions of a spouse as a homemaker have economic value in relation to the social and economic partnership of marriage, and that, in making equitable distribution in a divorce proceeding, a court must consider those contributions. *Drake v. Drake,* 555 Pa. 481, 493, 725 A.2d 717, 723 (1999); 23 Pa.C.S. §3502(a)(7). Furthermore, in a divorce proceeding alimony can only be awarded where the court finds that alimony is necessary, and, in making that determination, the court must consider the spouse's contributions as a homemaker and whether she lacks sufficient property, including the property distributed to her in equitable distribution, to provide for her reasonable needs. 23 Pa.C.S. §3701(b)(12) and (16). Moreover, Pennsylvania law permits sources other than actual wages to be included in the calculation of loss of earning capacity. In *Murdoch v. Commonwealth,* 110 Pa. Commw. 74, 78, 531 A.2d 1164, 1166 (1987), the court ruled that social security and veteran benefits are products of intellectual and physical labor. See also, *Krakar v. Don Stewart Trucking Inc.,* 323 F. Supp. 157, 159 (1971) (the court held that in accordance with Pennsylvania law, retirement pension and social security benefits may be introduced as evidence of loss of future earning power). Alimony receipts are similar in nature to these benefits. Thus, alimony receipts are a proper measure of damages in a survival action. We also find support for this conclusion in the following secondary source: "In the comparatively few cases in which the matter has been directly presented, the courts have uniformly held that the decedent's income from a pension, retirement plan payments, social security benefits, and other *receipts of like nature,* were to be consid-

ered, along with other relevant factors, in substantially the same manner as actual earnings in the calculation of pecuniary loss for the purpose of determining the recovery." 81 A.L.R.2d 949. (emphasis added) Thus, we rule that alimony receipts represent the decedent's earning power, and, therefore, that a genuine issue of material fact exists concerning the loss of the decedent's future earnings through the period of her life expectancy.[2] As a result, summary judgment is not warranted on this claim.

Next, we must address the plaintiff's claims for damages under the wrongful death portion of the Wrongful Death and Survival Act. In contrast to the survival action, the wrongful death action is not a decedent's cause of action. *Frey, supra* at 539, 607 A.2d at 798. A wrongful death action may be brought only by specified relatives of a decedent to recover their own damages, and not as beneficiaries of the estate. *Id.* Wrongful death damages are established for the purpose of compensating the surviving spouse, children or parents of a decedent for pecuniary loss they have sustained as a result of the death of the decedent. *Kiser, supra* at 226, 648 A.2d at 4. This action is designed to deal with the economic effect of a decedent's death upon these specified family members. *Frey, supra* at 540, 607 A.2d at 798. Damages recoverable in a wrongful death action include the present value of contributions the decedent would have rendered to

---

2. We point out that the issue of loss of future earnings is closely associated with additional issues here pertaining to longevity. After perusal of the record, it is apparent that the life expectancy of the decedent's ex-husband and the life expectancy of the decedent form the basis for additional genuine issues of material fact that are in dispute.

the family had she lived, as well as funeral and medical expenses. *Kiser, supra* at 226, 648 A.2d at 4.

We turn now to the defendants' assertion that the plaintiff suffered no pecuniary loss as a result of the decedent's death. We point out that the purpose of 42 Pa.C.S. §8301 is to compensate specified relatives (surviving spouse, children or parents) of a decedent for pecuniary loss they suffer as a result of the decedent's death. One such loss is the deprivation of the part of the *earnings* of the decedent which those relatives would have received from her had she lived. *Berry v. Titus,* 346 Pa. Super. 376, 381, 499 A.2d 661, 664 (1985). Thus, a child bringing a wrongful death action is required to demonstrate that he suffered pecuniary loss. *Id.* (citing *Manning v. Capelli,* 270 Pa. Super. 207, 211, 411 A.2d 252, 255 (1979)). In the present matter, the plaintiff testified that his parents divorced when he was 7 years old. (Deposition of Michael Burchfield, p. 7.) After the divorce, and during his remaining minority years, the plaintiff lived with his father, and he was financially supported by his father only. (*Id.,* pp. 7, 12.) It is also evident from the record that the plaintiff has been financially independent throughout his adult life. (*Id.,* pp. 12-14.) Additionally, the plaintiff has brought forth no evidence or documentation which demonstrates that the decedent provided any financial support to the plaintiff during his minority years subsequent to the divorce, or during his majority years. These facts fairly parallel the facts in *Manning,* in which the court held that an emancipated and financially independent adult child of the decedent, who had not lived with the decedent since she was eight months old, and who had never since that time received financial support from the

decedent, was not entitled to share in the distribution of settlement proceeds of a wrongful death action because the said adult child had suffered no pecuniary loss. *Manning, supra* at 214, 411 A.2d at 256.[3] The plaintiff in the matter before us is likewise an emancipated and financially independent adult child. The plaintiff, now 33 years of age, received no financial support from the decedent during his adult life, and hence, did not suffer any pecuniary loss in this regard as a result of the decedent's death. Thus, no genuine issue of material fact exists upon the plaintiff's claim for damages allegedly resulting from the loss of contributions to him from the decedent. Quite simply, the plaintiff has never received any part of those earnings in the past.[4]

The plaintiff is also claiming pecuniary loss for the deprivation of the *services* of guidance, emotional support, love and companionship he asserts were present in his relationship with the decedent. (Plaintiff's affidavit, pp. 1-2.) In *Spangler v. Helm's New York-Pittsburgh Motor Express,* 396 Pa. 482, 485, 153 A.2d 490, 492

---

3. The holding in *Manning* is based upon the Act of April 15, 1851, P.L. 669, §19, as amended, 12 P.S. §1601, the Act of April 26, 1855, P.L. 309, §1, as amended, 12 P.S. §1602, and the Act of May 13, 1927, P.L. 992, no. 480, §1, as amended, 12 P.S. §1604. The Wrongful Death and Survival Act, 42 Pa.C.S. §8301 et seq., is substantially a reenactment of these.

4. We note that granting summary judgment in favor of the defendants on this claim will not create a harsh result in that the issue of the loss of the decedent's future earnings may be presented at trial under the survival action. A wrongful death action and a survival action are properly brought together; however, damages are cumulative and are not meant to overlap or result in duplication of damages. *Kiser v. Schulte,* 538 Pa. 219, 227, 648 A.2d 1, 4 (1994) (citing *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659 (1942)).

(1959), our Supreme Court held that such things as the loss of companionship, comfort, society, guidance, solace, and protection are recoverable damages in a wrongful death action. An adult, if damaged by such loss of services, may recover, as well as a minor. *Gaydos v. Domabyl,* 301 Pa. 523, 532, 152 A. 549, 553 (1930). The individual affected by such a death need not reside at the same home or under the same roof as the decedent. *Id.* at 529, 152 A. at 551. However, in order for pecuniary loss to result from such a deprivation of services, a child must have received such services from a parent with such *reasonable frequency* as to lead to an expectation of the future enjoyment of those services. *Id.* at 529, 152 A. at 551. Pecuniary loss has been defined to be the destruction of a reasonable expectation of pecuniary advantage to be received from the decedent. *Id.* at 530, 152 A. at 552. Looking at the record here, we note that the plaintiff stated during his testimony that the last time he saw the decedent was in either 1980 or 1981.[5] (Deposition of Michael Burchfield, p. 12.) The plaintiff testified that, from the time he graduated from high school until the time of the fire, he had communicated with the decedent by phone and letter only. (*Id.,* p. 13.) The plaintiff also stated that he only had phone contact with the decedent "on a sporadic basis." (Plaintiff's affidavit, p. 2.) Furthermore, the plaintiff testified that he did not attend the decedent's funeral. (Deposition of Michael Burchfield, p. 21.) Thus, being ever mindful that we must re-

---

5. The record indicates that the plaintiff graduated from high school in 1983, served in the U.S. Navy from 1984 to 1988, lived in New Jersey from 1989 to 1990, and lived in Florida from 1990 until the time of the fire.

solve all doubts against the moving party and examine the record in a light most favorable to the nonmoving party, we, nevertheless, find that the plaintiff has failed to produce evidence sufficient to prove that he had actually received services from the decedent with such frequency as to lead to a reasonable expectation of the future enjoyment of those services. *Merriweather, supra* at 471, 684 A.2d at 140. As a consequence of this, and of his failure to establish his receipt of any contributions from the decedent's income, the plaintiff has failed to produce evidence sufficient to establish that he has suffered any pecuniary loss as a result of the decedent's death. Therefore, the evidence is insufficient to submit these claims to a jury at trial. Pa.R.C.P. 1035.2. As such, we must grant the defendants' motion for summary judgment on these claims.

We must now entertain the plaintiff's claim for damages resulting from the decedent's funeral and estate administration expenses. Reasonable funeral and administration expenses of a decedent's estate are a proper item of damages in a wrongful death action brought by the administrator of the estate. *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 649, 26 A.2d 659, 662 (1942); 42 Pa.C.S. §8301(d); see *Migias v. United States,* 167 F. Supp. 482, 487 (1958). The plaintiff, who is the administrator of the decedent's estate here, has set forth evidence which demonstrates that the decedent's estate incurred expenses in connection with the decedent's funeral and estate administration.[6] Therefore, summary judgment is not warranted on this claim.

---

6. The decedent's funeral and administration expenses are included in schedule H (funeral expenses, administrative costs, miscellaneous

Finally, we must consider the claim for damages for medical expenses incurred. The plaintiff has not demonstrated that any medical expenses were incurred between the time of the decedent's injury and her death. In fact, there is no dispute that the decedent did not survive the fire, and that her body was found in the apartment building after the fire was extinguished. Because no medical expenses were incurred, the decedent's death had no economic effect upon the plaintiff in this regard. *Frey, supra* at 540, 607 A.2d at 798. Therefore, we find that there are no genuine issues of material fact on this claim. Thus, the defendants' motion for summary judgment must be granted as it relates to this claim.

Accordingly, we enter the following:

## ORDER

And now, September 24, 1999, in accord with the opinion filed this date, the defendants' motion for summary judgment is granted in part and denied in part as follows:

(1) The motion is granted on the claim for the decedent's pain and suffering, on the claim for the plaintiff's loss of financial support from the decedent, on the claim for the plaintiff's loss of the decedent's services, and on the claim for medical expenses. As a result, on those claims judgment is entered in favor of the defendants and against the plaintiff.

(2) In all other respects, the motion is denied.

---

expenses) as a deduction on the decedent's inheritance tax return. (Exhibit A, attached to plaintiff's submission in opposition to defendants' motion for summary judgment.)